IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHY BARRON, | ◊ | |
| | ◊ | |
| Plaintiff, | ◊ | |
| | ◊ | |
| VS. | ◊ | No. 04-1080-T/An |
| | ◊ | |
| U.S. ATTORNEY GENERAL JOHN ASHCROFT, ET AL. | ◊ ◊ | |
| | ◊ | |
| Defendants. | ◊ | |

ORDER GRANTING MOTION TO AMEND
ORDER DENYING MOTION TO RECONSIDER MOTION TO STAY
ORDER DENYING MOTION TO RECONSIDER APPOINTMENT OF COUNSEL
ORDER DISMISSING CASE
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
ORDER DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Dorothy Barron, a resident of Paris, Tennessee, filed a *pro se* complaint seeking compensatory and punitive damages, pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971),[1] along with a motion seeking leave to proceed *in forma pauperis* and a motion seeking appointment of counsel. On May 26, 2004, plaintiff filed a one-paragraph motion seeking an indefinite delay of further court action, citing as cause her deteriorating health and the necessity of additional medical assistance and

---

[1] Although the complaint does not explicitly invoke <u>Bivens</u>, the plaintiff purports to sue federal officials for violating her rights under the Fifth and Fourteenth Amendments.

treatment. The Court issued an order on March 31, 2005 granting leave to proceed *in forma pauperis*, denying appointment of counsel, and denying the motion to stay. On April 8, 2005, plaintiff filed a motion seeking reconsideration of her motion to stay and motion for appointment of counsel, and seeking leave to amend. Pursuant to Fed. R. Civ. P. 15(a), a party may amend her complaint once as a matter of right prior to the filing of a responsive pleading. Therefore, the motion to amend is GRANTED; therefore, the Court will consider the matters set forth in the April 8, 2005 amendment.

The April 8, 2005 motion also seeks reconsideration of the order denying her motion to stay all proceedings in the case for up to twelve months. As more than eleven months have elapsed since the filing of this motion, the motion has been granted by default. However, as the case is subject to *sua sponte* dismissal for the reasons set forth *infra*, the motion for reconsideration is DENIED. Due to the dismissal of the case, the request for reconsideration of the motion for appointment of counsel is DENIED as moot.

The Clerk shall record the defendants as former U.S. Attorney General John Ashcroft; Rod Paige, the former Secretary of the U.S. Department of Education; Tommy Thompson, the former Secretary of the U.S. Department of Health and Human Services; Norman Mineta, the Secretary of the U.S. Department of Transportation; and Mel Martinez, the former Secretary of the U.S. Department of Housing and Urban Development.

I.      Analysis of Plaintiff's Claims

The complaint purports to assert a number of unrelated claims concerning services the plaintiff is receiving pursuant to unspecified federal statutes. In particular, the complaint

asserts violations of "the plaintiff's 5th and 14th Constitution rights [sic], civil rights, government agencies' negligence and lack of accountability, biased rulings and actions by government officials and administrative hearing officers, physical abuse, and agency discrimination due to the plaintiff's state of poverty."

The plaintiff apparently suffers from an unspecified physical disability as a result of an accident. With respect to her claim against defendant Paige, the plaintiff alleges that, in 2002, she elected to return to school as part of a "back to work program." (Compl., ¶ 3.) The complaint alleges as follows:

> Under the US Department of Education's Vocational Rehabilitation Back to Work Program in Tennessee, the plaintiff enrolled in the University of Tennessee at Martin. At the start of the school year, Vocational Rehab failed to provide a transportation service provider to transport plaintiff to school. Once providers were assigned, Vocational Rehab Agency Manager, David Parrish, often changed and issued contradictory which resulted in the abrupt cancellation of transportation services to the plaintiff. When the plaintiff was forced to relocate from the city to the county, Vocational Rehab refused to pay for school transportation from the county to the city. The plaintiff was forced to miss school days. The plaintiff was threatened with having services denied and cut off unless plaintiff moved to the University of Tennessee's Martin campus. Various services were cut off or denied plaintiff. Initial complaints were heard by the same individual in the person of Ms. April Martin. Ms. Martin also presided and issued a biased ruling as the Administrative Hearing Officer during the plaintiff's Tennessee Department of Human Services Hearing. When problems continued to arise and Voc Rehab refused to pay for necessary services, the plaintiff filed additional complaints in 2003. The plaintiff sought access to the Vocational Rehab policy manual in order to prepare for a Vocational Rehab Administrative Hearing, but was denied access until it was too late to prepare for the hearing. The plaintiff was given unofficial or non-government forms in which to file the administrative complaints on. Unable to obtain a fair and impartial hearing, the plaintiff has sought relief in US District Court.

Id., ¶ 4.

With respect to her claim against defendant Thompson, the complaint alleges as follows:

> 5. . . . The plaintiff has been and is presently being subject to harassment, negligence, retaliation, and blackballing as a result of having reported and filed complaints against individuals and entities within the medical community.  Former complaints filed with the US Department of Health and Human Services resulted in gross negligence on the part of: 1) federal government agency administrators and 2) biased rulings on the part of state and federal agency administrative hearing officers.
> 6. Plaintiff, Dorothy Barron has been forced and reduced to crawling on the floor since August 2003, in an effort to move about inside the home due to lack of medically necessary equipment in the form of an electric scooter.
> 7. The plaintiff has a physical disability which necessitates the use of a motorized electric scooter for both indoor and outdoor use and plaintiff required a replacement for the original 1997 electric scooter in August 2003.
> 8. The actions and/or conflicting and contradictory policy information supplied to the plaintiff from US Department of Health and Human Services administrators, Medicare contractors, and Medicare service providers has placed the plaintiff's health in further jeopardy.
> 9. The Department of Health and Human Services officials were negligent when they failed to hold Medicare service providers accountable for giving false information to Medicare regarding the plaintiff in order to conceal their violating the plaintiff's rights.
> 10. Presently, Medicare equipment service providers have made medical determinations and decisions regarding the plaintiff [sic] medical condition based on codes which are not indicative of the plaintiff's disability.  Impoverished and unable to produce $2,300.00, the rights and avenue to appeal does not exist.  Negligent and retaliative physicians aren't challenged or held accountable by Medicare.
> 11. Plaintiff, Dorothy Barron's [sic] has been denied life, liberty, and well-being.  Due to the lack of medically necessary equipment in the form of an electric scooter, the plaintiff's existing physical disability has become exacerbated, with additional medical problems resulting in strained [sic] and inflammation in both knees, lower extremities, hip, and neck pain.  The plaintiff is confined predominately to one room in the home, unable to leave the home unassisted, denied social activities, unable to cook well balanced and nutritional meals, or take care of personal hygiene needs on a daily basis.

<u>Id.</u>, ¶¶ 5-11.

With respect to plaintiff's claim against defendant Mineta, the complaint alleges as follows:

> 12.   . . . The Northwest Tennessee Human Resource Agency operates a transportation service for rural areas.  The plaintiff requested written non-medical transportation rates for surrounding cites [sic], along with policy procedures pertaining to such in Jan of 2004.  Denied the requested information from Transportation Director; Tommy Bradberry, the plaintiff contacted the State Commissioner of Transportation, Gerald Nicely.  March of 2004, the plaintiff received a plain, one page sheet with typed rates and instructions, not on agency letterhead.  Calling Northwest Transportation Service to make transportation arrangements to Nashville, the plaintiff was quoted a rate, three times the amount designated in writing.  Once the plaintiff requested that transportation travel arrangements along with the rate be given her in writing, the written rate was three times less than the amount originally quoted.  Calling the company two days later to arrange a return trip home, the plaintiff was informed that there were to be "no more rides."  The plaintiff was forced to borrow $100.00 to return home.  Individuals within this agency have resorted to vindictive and retaliative actions when some riders question agency policies and the violations of their rights.  The plaintiff has yet to be provided with a copy of the agency's ridership guidelines.  In 2003, the plaintiff, while a student in college relocated from the city to the county.  Northwest Transportation refused to transport the plaintiff from the county to city of Paris because the plaintiff didn't have a contract with Northwest.  The plaintiff was forced to miss school.
> 13.   In 2002, the plaintiff filed a 9-12 page complaint with the US Department of Transportation citing specific agency violations.  The plaintiff and another individual who had filed complaints with US federal agencies both had their riding privileges against Northwest Transportation suspended.

<u>Id.</u>, ¶¶ 12-13.

With respect to her claim against defendant Martinez, the plaintiff apparently receives subsidized housing pursuant to § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f.  The substantive allegations of the complaint are as follows:

5

>August of 2003, Plaintiff, Dorothy Barron contacted HUD Section 8 Rental Caseworker, Brenda Copeland to visit and inspect conditions which had become hazardous to the plaintiff's health, consisting of what appeared to be a fungi in the carpet, mold, etc. the conditions seriously affected the plaintiff's health.  During the telephone call, the plaintiff requested the procedure in writing for relocating in an emergency situation and HUD's policy regarding harmful levels of fungi and mold.  The plaintiff was informed that HUD had no such standards.  Denied the requested information from Ms. Copeland, the plaintiff contacted the state office of HUD and was eventually sent information.  During a visit to the plaintiff's home, the plaintiff offered to cite the hazardous situation in writing, but was told it wasn't necessary by Mrs. Copeland.  The plaintiff was told the homeowner had 30 days to correct the problem.  The plaintiff was instructed to proceed with locating another rental property.
>   15.   The plaintiff's attempt to remain in the dwelling for thirty days resulted in the plaintiff having to seek medical assistance and temporarily relocating to a hotel.  The doctor informed the plaintiff to avoid the very conditions in which the plaintiff was exposed to.  Plaintiff, Dorothy Barron, offered to supply Ms. Copeland with a copy of the doctor's instructions, but was informed it wasn't necessary.  At the end of the thirty day period, the plaintiff was informed that the homeowner could be given a thirty day extension.  The homeowner informed the plaintiff that even with a thirty day extension, she wasn't sure the repairs could be completed.  Once the plaintiff relocated due to hazardous conditions within the home, the plaintiff was terminated from the Section 8 Rental Assistance Program, because Section 8 officials alleged that plaintiff moved without proper notice to the Tennessee Housing Agency.  The plaintiff was denied requested information, given conflicting verbal instructions to prevent the plaintiff from relocating until the rental contract was up.  Of the plaintiff's $584.00 monthly income, $415.00 is paid in rent.

Id., ¶¶ 14-15.

In the amendment to the complaint, which was filed on April 8, 2005, plaintiff seeks to assert claims against the U.S. Department of Education Vocational Rehabilitation Program for violations of unspecified federal law and of the Fifth and Fourteenth Amendments to the Untied States Constitution.  (4/8/05 Mot., ¶ 3.)  Plaintiff also seeks to amend her claim

against the U.S. Department of Health and Human Services because of purported violations of unspecified regulations promulgated in connection with the Family Support Program. Id. ¶ 4.

The Court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action—

- (i) is frivolous or malicious;
- (ii) fails to state a claim on which relief may be granted; or
- (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). The plaintiff's complaint is subject to dismissal in its entirety.

The complaint in this action fails to comply with the Federal Rules of Civil Procedure. In particular, Fed. R. Civ. P. 8(a)(1) requires "[a] pleading which sets forth a claim for relief" to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." The complaint in this case does not contain any jurisdictional allegations. Although the plaintiff's claims appear to be based on the federal statutes and regulations that govern the programs under which she receives benefits, the complaint does not cite federal law, apart from the references to the Fifth and Fourteenth Amendments to the United States Constitution, which will be addressed *infra*. The Sixth Circuit has emphasized that "[a] complaint must contain "'either direct or inferential allegations respecting all the material elements to sustain a recovery under <u>some</u> viable legal theory.'" Mitchell v. Community Care Fellowship, 8 Fed. Appx. 512 (6th Cir. May 1, 2001) (emphasis in original; citation omitted).

The Court ordinarily would order the plaintiff to amend her complaint to comply with the Federal Rules of Civil Procedure. Such a course is, however, unavailable when a Court is screening a complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B). McGore v. Wrigglesworth, 114 F.3d 601, 612 (6th Cir. 1997). Under these circumstances, the Court will analyze the case as a Bivens action, as the complaint alleges violations of the federal constitution by federal officials. The Court will not, however, speculate about whether the facts alleged constitute a violation of some other federal law or regulation, and the plaintiff retains the right to commence a new action concerning the same subject matter and alleging violations of any applicable federal statute or regulation, so long as the new complaint is in compliance with Fed. R. Civ. P. 8(a)(1).

Even if it is assumed that the complaint alleges violations of the Fifth and Fourteenth Amendments by federal and state employees, the complaint fails to state a claim against defendants Ashcroft, Paige, Thompson, Mineta, and Martinez. The complaint contains no factual allegations concerning the only named defendants. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985).

Moreover, there is no *respondeat superior* liability under 42 U.S.C. § 1983 or Bivens. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984); accord Okoro v. Scibana, 63 Fed. Appx. 182, 184 (6th Cir. Apr. 1, 2003) (Bivens). Instead,

8

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Bellamy, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates yet fails to act generally cannot be held liable in his individual capacity. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). In this case, the complaint is devoid of allegations that defendants Ashcroft, Paige, Thompson, Mineta, and Martinez "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," Bellamy, 729 F.2d at 421, or that the allegedly unconstitutional conduct described in the complaint was the direct result of the failure of Ashcroft, Paige, Thompson, Mineta, and Martinez to perform a function he was legally obligated to perform, Doe v. Claiborne County, Tennessee, 103 F.3d 495, 511-12 (6th Cir. 1996). It is apparent that Ashcroft, Paige, Thompson, Mineta, and Martinez are named in the complaint because of their positions, or former positions, as Attorney General and as the heads of the federal agencies that administer the programs that provide services to the plaintiff. Defendants Ashcroft, Paige, Thompson, Mineta, and Martinez are not alleged to have had any direct, personal involvement in the events at issue in this action, and they cannot be held liable under Bivens for the actions of their subordinates.

Plaintiff has no claim even if it is assumed that she has sued the defendants in their official capacities. Such a claim is, in effect, asserted against the United States, which can

be sued only to the extent to which it has waived sovereign immunity. United States v. Orleans, 425 U.S. 807, 814 (1976); Feyers v. United States, 749 F.2d 1222, 1225 (6th Cir. 1984); Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 653 F. Supp. 1200, 1206 (E.D. Mich. 1986). A waiver of sovereign immunity cannot be implied but, rather, must be unequivocally expressed by Congress. United States v. Mitchell, 445 U.S. 535, 538 (1980); Johnson v. Hubbard, 698 F.2d 286, 290 (6th Cir. 1983); Jahn v. Regan, 584 F. Supp. 399, 406 (E.D. Mich. 1984).

Plaintiff's claims against the U.S. Departments of Justice, Education, Health and Human Services, Transportation, and Housing and Urban Development are barred by sovereign immunity. Franklin v. Henderson, No. 00-4611, 2000 WL 861697, at *1 (6th Cir. June 20, 2001); Fagan v. Luttrell, No. 97-6333, 2000 WL 876775, at *3 (6th Cir. June 22, 2000) ("Bivens claims against the United States are barred by sovereign immunity. . . . The United States has not waived its immunity to suit in a Bivens action."); Miller v. Federal Bureau of Investigation, No. 96-6580, 1998 WL 385895, at *1 (6th Cir. July 1, 1998) ("the doctrine of sovereign immunity precludes a Bivens action against a federal agency for damages"); see also Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 115-16 (6th Cir. 1988) (per curiam) (barring claim against federal employee in his official capacity).

For all the foregoing reasons, the Court DISMISSES the plaintiff's Bivens claims against the defendants in their individual capacities pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court also DISMISSES the plaintiff's Bivens claims against the defendants in their

official capacities pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).[2]  Finally, to the extent the complaint purports to assert any other claim, it is DISMISSED without prejudice pursuant to Fed. R. Civ. P. 8(a)(1).

The Court must also consider whether plaintiff should be allowed to appeal this decision *in forma pauperis*, should she seek to do so.  Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Fed. R. App. P. 24(a).  See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party has been permitted to proceed *in forma pauperis* in the district court, she may also proceed on appeal *in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed *in forma pauperis* in the Court of Appeals.  Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962).  An appeal is not taken in good faith if the issue presented is frivolous. Id.  It would be inconsistent for a district court to determine that a complaint does not warrant service on the defendants, yet has sufficient merit to support an appeal *in forma pauperis*. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983).  The same considerations

---

[2] Although the United States has waived its sovereign immunity for claims brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, the Court declines to construe the complaint as arising under the FTCA because it does not appear that the plaintiff has properly exhausted her claims as required by 28 U.S.C. § 2675.

11

that lead the Court to dismiss the complaint for failure also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by the plaintiff is not taken in good faith. Leave to proceed on appeal *in forma pauperis* is, therefore, DENIED. Accordingly, if plaintiff files a notice of appeal, she must pay the $255 appellate filing fee in full or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

        s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE